19215

Ruldoph I. RAJCICH, Respondent, v. Virgia RAJCICH, Appellant.
(181 S. E. (2d) 11)

*H. T. Abbott, Esq.,* of Conway, *for Appellant,*

*Harry Pavilack, Esq.,* of Myrtle Beach, *for Respondent,*

May 3, 1971.

LITTLEJOHN, Justice

The plaintiff-husband was granted a divorce from the defendant-wife on the ground of desertion. The default decree was dated February 2, 1970, and granted to husband full custody of the four children born to the marriage. Thereafter the wife moved to vacate the decree and open the default judgment on the grounds of mistake, inadvertence or excusable neglect pursuant to Sections 10-609 and 10-1213 of·the code. On June 15, 1970 the lower court denied the motion. The wife has appealed.

The sole question presented in this appeal is whether the lower court erred in failing to relieve the wife of the default judgment, and in failing to allow her to answer the complaint and contest the action. We hold that such relief should have been granted, and reverse.

The wife and husband were married in 1951. They have four children who were as of 1970, ages 17, 10, 8 and 7 years. The husband is a Major in the Air Force and was stationed at Myrtle Beach for some time prior to October 1967, when he was transferred to the State of Maine. It is his contention that the wife refused to accompany him, and accordingly deserted him as of that time.

The divorce action was commenced by service of a summons and complaint on the wife September 24, 1969. However, the action was not filed in the office of the Clerk of Court until October 22, 1969. The wife did not answer the complaint; the judge of the lower court heard the case on January 12, 1970, and filed a decree on the same day granting the divorce and custody of the children. Section 10-108 of the code requires that three months must elapse between the date the action is filed with the clerk and the date the

decree is granted. Accordingly, the decree was prematurely issued; the lower court recognized this and issued a new decree granting the same relief on February 2, 1970.

A hearing on the motion was held before the judge on March 11, 1970 to determine if the default judgment should be reopened. At such hearing the wife was the moving party and the burden of proof was on her to make a *prima facie* showing of excusable neglect and of a meritorious defense. The court did not have before it at that time the merits of the divorce action. The testimony upon which the divorce and custody was granted was not recorded and we do not have the benefit of it in evaluating the entire situation. At the hearing on the motion the husband did not testify nor present any evidence, and accordingly the wife's factual showing is not substantially in dispute, though it is contested.

It is the testimony of the wife that before the husband was transferred, the family had decided to make the Myrtle Beach area its permanent home after retirement; that after his transfer to Maine he came back periodically to be with the wife and family at least until January 1969. She submits that the intent to live together was corroborated by a mortgage executed by both of them on November 25, 1968. It covered the home in which the family resided near Myrtle Beach, and was executed within the one year period of the alleged desertion. The wife testified that they cohabited in October 1968. The complaint served September 24, 1969 alleged that the desertion had existed for a year at that time. If the husband had not been deserted at the time they joined in the signing of the mortgage in November 1968 or the cohabitation in October 1968, the statutory one year required for desertion could not have elapsed at the time the suit was commenced.

On the question of excusable neglect the wife testified that after the action was commenced she had no money to employ a lawyer. The husband returned home in October 1969

and at Christmas time 1969; she gained the impression that he was not going through with the divorce. On January 13, 1970 the husband returned to the house, showed the wife the prematurely-granted divorce decree which granted custody of the children to him. A squabble ensued over the transfer of the children, and she, in her frustration, fired a gun but did not hit him.

On January 22, 1970 she was arrested and placed in jail for violation of the bad check law; her contention is that the checks were written in a desperate attempt to provide support for her four children. She reasoned that the court would require her husband to make the checks good since he had the duty to support the children. She was still incarcerated on March 11, the date of the hearing. About that time the judge committed her to the state hospital for mental examination and evaluation. She was adjudged sane and discharged. It was not until after the discharge that the lower court dismissed the motion.

Divorce cases are, of course basically contests between the litigants. At the same time, this court has held that the State is an interested party in all divorce proceedings. *Grant v. Grant,* 233 S. C. 433, 105 S. E. (2d) 523 (1958). This is especially true when the welfare of minor children is involved; it is of particular concern to the court when no guardian *ad litem* has been appointed to speak on behalf of the children. It would be helpful for purposes of review if the testimony was transcribed in divorce and child custody cases. Such is the better practice. It was not done in this case, and the record is silent as to what attention was given to the custody aspects of the case. We do not intimate that the lower court erred in granting custody to the father; however, at best, the court had only the benefit of such evidence as the father who sought custody saw fit to present.

The duty of the court is indicated in 27A C. J. S. Divorce, § 148 as follows:

"The court does have inherent power to do equity, and has the power and duty to protect the public interest and those persons specially interested but not before the court, such as children born or *en ventre sa mere;* and it should carefully scrutinize the proceedings, to guard against collusion and other questionable methods, particularly in case of default."

In light of our recent case of *Lanier v. Lanier,* 251 S. C. 117, 160 S. E. (2d) 558 (1963) on similar facts, we conclude that the facts alleged here make out a *prima facie* case of excusable neglect. In *Lanier* we ruled:

"Society has an interest in the preservation of marriages, and defaults in divorce actions are more readily opened than in other cases. *Holliday v. Holliday,* 235 S. C. 246, 111 S. E. (2d) 205. A duty rests upon the court to prevent the disruption of the marital relationship 'except under circumstances and for causes fully sanctioned by law.' *Grant v. Grant,* 233 S. C. 433, 437, 105 S. E. (2d) 523, 525."

Some of the actions and activities of the wife are not to be commended. We intimate no thought relative to the merits of the case. It may or may not develop at a new hearing that the relief heretofore granted is proper. The extent of our ruling is to hold that under all the circumstances disclosed by the wife's showing (the same being undisputed by the husband), she should be given her day in court. This will include, of course, her right to contest the custody issue, as well as the divorce.

The case is remanded and the wife shall have the right to answer.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.