0249

BANKERS TRUST OF SOUTH CAROLINA, Plaintiff-Respondent, v. Thomas S. BRUCE and Mary E. Bruce, Appellants, v. LEATHERWOOD, WALKER, TODD AND MANN, Intervenors-Respondents.

(323 S. E. (2d) 523)

Court of Appeals

*A. Camden Lewis,* of *Austin & Lewis,* Columbia, *for appellants.*

*John H. Lumpkin, Jr., Paul B. Nix, Jr.,* and *Robert W. Dibble, Jr.,* Columbia, *for plaintiff-respondent.*

*Richard J. Foster* and *Eugene C. Covington, Jr.,* Greenville, *for intervenors-respondents.*

Heard June 18, 1984.

Decided Sept. 4, 1984.

SHAW, Judge:

This is an appeal from an order finding no conflict of interest of a law firm requiring the reopening of a deficiency judgment entered against the appellants—Mr. and Mrs. Thomas S. Bruce. The lawsuit giving rise to this appeal grew out of a lawsuit contesting the qualifications of real estate appraisers under Section 29-3-700, 1976 South Carolina Code of Laws. After finding the appraisers to be unqualified, the Supreme Court ordered a remand for the appointment of new appraisers. The trial court was also ordered to "conduct a full hearing on appellants' allegation their counsel during the foreclosure proceedings was subject to a conflict of interest and determine whether the conflict, if any, requires reopening the deficiency judgment". *Bankers Trust of South Carolina v. Bruce, et al.,* 275 S. C. 35, 38, 267 S. E. (2d) 424, 425 (1980). We affirm the trial court's holding that no conflict of interest existed.

On February 11, 1974, Dan Bruce, Tom Bruce, and Jimmy Jones, as individuals, borrowed $750,000 from Bankers Trust for which they were severally liable. Tom Bruce's and Jones' wives co-signed the note. This loan was secured by certain real property owned individually by the three borrowers above, but held in trust by them for two limited partnerships in which all three were general partners.

Harvey G. Sanders of the law firm of Leatherwood, Walker, Todd & Mann was not involved in the loan negotiation process; however, he handled the closing. Sanders and Dan Bruce had an attorney-client relationship for many years. Sanders represented Dan in many past business ventures involving corporations, partnerships, and real estate, and helped him obtain

financing in some of them; the two also had a business relationship at one time.

Through Dan, Sanders met Dan's father Tom in the early 1970's. Their acquaintance resulted in Sanders representing Tom's company, the P. L. Bruce Company in several matters. Sanders also represented Tom Bruce in transactions involving the mortgaged real property herein. Sanders drafted the partnership agreement and the declaration of trust concerning the realty. He also drew up an agreement modifying the note, which extended the maturity date and provided for a fixed, lower interest rate among other things. The two wives were not parties to the modifications agreement.

In January of 1977, the loan went into default. Bankers Trust sent a demand letter to the Bruces and Jones on March 1, 1977. Thereafter, Tom Bruce and Sanders entered into a series of face-to-face and telephone conversations during the spring of 1977 concerning whether Sanders could represent them at the foreclosure proceeding. Bankers Trust had a retainer relationship with the Leatherwood firm whereby, for the payment of a periodic, quarterly fee, the Leatherwood firm provided legal advice to Bankers Trust in seven specific areas. Litigation matters were specifically excluded. Julian Turner, President of Bankers Trust, testified the retainer did not cover loan closings nor foreclosures.

Sanders testified he told Dan and Tom Bruce his firm had a retainer relationship with Bankers Trust whereby the firm was paid periodic fees. He admits the amount of the fees and the areas encompassed by the retainer were not disclosed. While Tom Bruce claims he had no knowledge the Leatherwood firm had ever represented Bankers Trust, he concedes having conversations with Sanders concerning whether or not Sanders would be able to represent them in the foreclosure proceedings.

The Bruces and Jones were served with a complaint dated May 4, 1977. The complaint and following letter dated May 6, 1977, were hand delivered to Sanders.

> Dear Harvey,
>     Herewith is a request on behalf of myself, Jimmy Jones and Dan. The request is that you represent us in the matter concerning our 291 Project and Bankers Trust Land Mortgage.

The reasons for this request is as follows:

1. You have represented us in all matters relating to this project from the beginning (involving many complicated transactions).

2. We have more faith in your ability to adequately represent us than anyone else.

3. If Tommy Wyche, whom we consider has a "direct" conflict of interest, could represent Bankers Trust, we feel you could surely represent us.

4. We personally know that Bankers Trust has every major law firm in town representing them, and that in the manner in which we feel you would handle this problem, would serve only to enhance whatever future possibilities your firm has of doing business with Bankers Trust.

5. You have represented us in all matters relating to closings and other matters concerning this same mortgage with Bankers Trust.

We certainly hope you understand our need for your help in this matter.

> Sincerely,
> Tom S. Bruce, Dan E. Bruce,
> and James E. Jones, Jr.

On May 11, Sanders met with Tom Bruce. He told Bruce he needed to discuss his possible representation with Wesley Walker, the firm's senior member who did much of Bankers Trust's work. After discussing the matter with Bankers Trust officials, Walker informed Sanders there was no conflict of interest. On May 29, Sanders informed the Bruces and Jones he could represent them. Tom Bruce's notes of that conversation reflect he was told the matter was cleared with Wesley Walker, Sanders would handle the case, and there was no conflict.

After the foreclosure sale, a deficiency judgment of $448,017.75 was entered against the Bruces, Dan Bruce, and the Jones. (Jones and his wife have reached a settlement with Bankers Trust. Dan Bruce voluntarily filed for bankruptcy and was discharged from liability on the deficiency judgment. Thus, only Tom Bruce and his wife are presently involved). As Sanders prepared the appeal based on the qualifications of the appraisers, the Leatherwood firm received a letter from

Tom Bruce dated May 1, 1978, in which he listed several complaints about the legal services he was receiving. One of Bruce's concerns was a possible conflict of interest affecting Sanders' zeal to represent him because of Leatherwood's retainer with Bankers Trust. Bruce's letter continued by stating he still desired to continue the relationship. However, after a meeting with the Bruces on May 3, 1978, the Leatherwood firm decided it was best not to continue the representation under these circumstances. The Bruces' current attorneys continued the appeal of the appraisers' qualifications which gave rise to the instant lawsuit.

This is truly a case of first impression. We are not aware of any other case in which a deficiency judgment was reopened due to an attorney's conflict of interest. A court of equity has the inherent power to set aside a judgment on the ground of fraud. *Bryan v. Bryan,* 220 S. C. 164, 66 S. E. (2d) 609 (1951); *Center v. Center,* 269 S. C. 367, 237 S. E. (2d) 491 (1977); *Rycroft v. Tangway,* 279 S. C. 76, 302 S. E. (2d) 327 (1983). However, counsel for the Bruces concedes there is no direct evidence of any improper contact or fraudulent collusion between Bankers Trust and the Leatherwood firm during the entire foreclosure process. Therefore, the Bruces' exclusive remedy for relief from the deficiency judgment must be found in Section 15-27-130 of the 1976 South Carolina Code of Laws. *S. C. DDS v. Scruggs,* 278 S. C. 80, 292 S. E. (2d) 300 (1982); *S. C. DDS v. Durham,* 274 S. C. 222, 262 S. E. (2d) 49 (1980).

At the trial, the burden was upon the Bruces to prove to the satisfaction of the trial judge they were entitled to relief from the deficiency judgment. *Jolley v. Jolly,* 265 S. C. 594, 220 S. E. (2d) 882 (1975); *Rajcich v. Rajcich,* 256 S. C. 121, 181 S. E. (2d) 11 (1971). The motion to vacate or open a judgment is addressed to the sound discretion of the trial judge and his ruling will not be disturbed absent a clear showing of an abuse of discretion. *Ledford v. Pennsylvania Life Ins. Co.,* 267 S. C. 671, 230 S. E. (2d) 900 (1976). An abuse of discretion arises in cases in which: (1) the judge issuing the order was controlled by some error of law; or (2) where the order, based upon factual, as distinguished from legal, conclusions, is without evidentiary support. *Brown v. Weathers,* 251 S. C. 67, 160 S. E. (2d) 133 (1968); *Rochester v. Holiday Magic, Inc.,* 253 S. C. 147, 169 S. E. (2d) 387 (1969).

It is this scope of review that controls our consideration of the issues raised in this case. Of course, it is incumbent upon the Bruces, as appellants, to clearly show an abuse of discretion. *Blakely v. Wright,* 269 S. C. 6, 235 S. E. (2d) 803 (1977).

The first issue for our consideration is the scope of discovery and inquiry. In an order dated January 8, 1981, the trial judge stated "both parties may engage in discovery of matters occurring during the foreclosure proceedings, namely from May 4, 1977, the date foreclosure was commenced, to June 2, 1978, the date respondents' [the Bruces] prior counsel was removed as of record". The Bruces complain that at the hearing the trial judge improperly expanded the scope of the inquiry leaving them in the position of meeting testimonial evidence they were precluded from discovering.

Immediately after the trial began, prior to the taking of any witnesses' testimony, a question arose as to the introduction into the record of portions of depositions. Counsel for the Bruces introduced only portions of the deposition of Ian S. Walker, Vice-President of Bankers Trust, so as to comply with the January 8 order limiting the scope of inquiry. Opposing counsel objected on the grounds that Circuit Court Rule 87(D)(4) allowed an adverse party to introduce all of a deposition when only parts of it had been offered in evidence. When counsel for the Bruces explained he was attempting to comply with the scope of inquiry, the trial judge stated his order was not intended to deprive any party from going into any matter relevant to the conflict question. It was then pointed out by opposing counsel the Ian Walker deposition went back to 1968. At that point, counsel for the Bruces stated, "I don't mind going into the conflict question, Your Honor. I think that's important. I'll be glad to go back as far as they want". Later in the trial, counsel for the Bruces objected to questions eliciting testimony he considered to be outside the scope of inquiry.

We agree with the trial judge his order was not intended to deprive any party from going into any matter relevant to the conflict question. Any evidence that assists in getting at the truth of the issue in question is relevant and admissible unless because of some legal rule it is incompetent. *Wimberly v. Sovereign Camp,* 190 S. C. 158, 2 S. E. (2d) 532 (1939); *Toole v. Salter,* 249 S. C. 354, 154 S. E. (2d) 434 (1967). The determination of the relevancy of evidence is largely within the discre-

tion of the trial judge. *Hankins v. Foye*, 263 S. C. 310, 210 S. E. (2d) 305 (1974); *Merrill v. Barton*, 250 S. C. 193, 156 S. E. (2d) 862 (1967). There was no objection that the evidence in question was irrelevant or incompetent other than being outside the scope of inquiry set forth in the January 8 order. All of the evidence objected to on this ground was relevant to the conflict question; there was no abuse of discretion in admitting it.

Furthermore, counsel for the Bruces consented to enlarging the scope of inquiry. He cannot now object to that to which he consented. *See Hughes v. Edisto Cypress Shingle Co.*, 51 S. C. 1, 28 S. E. 2 (1897).

The Bruces next argue the trial judge erred in allowing the Leatherwood firm to intervene. Section 15-5-30 states:

Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the questions involved therein.

While Bankers Trust initiated the proceeding below by petition for rule to show cause, the Bruces are the parties who moved to reopen the deficiency judgment. They are the parties complaining about the deficiency judgment and are thus the true plaintiffs in this case. Section 15-5-10; 59 Am. Jur. (2d) *Parties*, Section 7 at 350 and Section 20 at 370 (1971); *Cooper v. Bolin*, 431 S. W. (2d) 69 (Mo. 1968) (plaintiff is synonymous with party in that he is the party who complains).

"Interest" means any interest in the action, legal or equitable, as would make a party a proper party to the action. *Page v. Lewis*, 203 S. C. 190, 26 S. E. (2d) 569 (1943). It can hardly be claimed the Leatherwood firm has no interest in this case. One of their attorneys is, indirectly, being accused of unethical conduct which, if true, could result in disbarment. The reputation of the entire firm is at stake. A good reputation for honesty, uprightness, and fair dealing is a valuable possession which has never been doubted. To destroy the reputation of the firm would be to destroy it financially. To permit this case to go to a judgment which could injure the reputation of the Leatherwood firm without giving it an opportunity to defend its name would be a great wrong without remedy. We hold the

Leatherwood firm has a direct legal interest in the outcome of this case and that the trial judge properly allowed it to intervene. *Dodd v. Reese*, 216 Ind. 449, 24 N. E. (2d) 995 (1940); Berry v. Slappey, 229 Ga. 109, 189 S. E. (2d) 394 (1972); *U. S. Casualty Co. v. Taylor*, 64 F. (2d) 521 (4th Cir. 1933), cert. den. 290 U. S. 639, 54 S. Ct. 56, 78 L. Ed. 555 (1933).

It is next claimed the trial judge signed an order prepared in its entirety by the Leatherwood firm and that the findings therein are wholly unsupported by the facts. This court does not condone that practice. However, the findings in the order, though not the product of the trial judge's mind, are formally his. Such orders and the findings therein are not to be rejected out-of-hand; they will stand if supported by the evidence. *U. S. v. El Paso Natural Gas Co.*, 376 U. S. 651, 84 S. Ct. 1044, 12 L. Ed. (2d) 12 (1964). The trial judge's finding no conflict of interest existed is supported by the evidence.

Tom Bruce claims he was surprised to learn of the Leatherwood firm's retainer relationship with Bankers Trust, that he never would have hired Sanders or any other attorney from that firm had he known of the relationship, and this conflict of interest caused Sanders not to raise several meritorious defenses at the trial that were available to the Bruces. These circumstances, Bruce claims, require the deficiency judgment to be vacated under Section 15-27-130.

12-14 DR5-105(C) of Supreme Court Rule 32 reads:

> In the situations covered by DR5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.[1]

This subsection has two requirements which must be satisfied in order for the Leatherwood firm to have properly repre-

---

[1] We recognize that an adverse effect on an attorney's exercise of independent judgment is presumed when an attorney takes an adversary position toward another client. So long as full disclosure is given and the client's consent is obtained, multiple representation is allowed. *See IBM v. Levin*, 579 F. (2d) 271 (3rd Cir. 1978).

sented the Bruces against a client on retainer. One, it must have been obvious to the Leatherwood firm it could adequately represent the interests of each client. Two, each client must consent to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each client. The consent obtained from each client after full disclosure of the possible effect of multiple representation must be an informed consent.[2] *City Consumer Services, Inc. v. Horne,* 571 F. Supp. 965 (C. D. Utah 1983); *Lysick v. Walcom,* 258 Cal. App. (2d) 136, 65 Cal. Rptr. 406 (1968); *Unified Sewerage Agency v. Jelco, Inc.,* 646 F. (2d) 1339 (9th Cir. 1981).

We have little difficulty in concluding the first requirement was met. The Leatherwood firm was only representing one side, the Bruces, in the foreclosure proceeding. The retainer agreement with Bankers Trust did not cover mortgage foreclosures and specifically excluded litigation. While the Leatherwood firm had represented Bankers Trust in past foreclosure cases and in other matters, Sanders had performed little of this work. Under these circumstances, there is no real and substantial conflicting relationship between the subject matter of this litigation and the matters covered under the retainer agreement which would prevent an adequate representation. *In the interest of H.W.E.,* 613 S. W. (2d) 71 (Tex. Civ. App. 1981); *Unified Sewerage Agency v. Jelco, supra; see also Arcon Construction Co. v. State,* 314 N. W. (2d) 303 (S. D. 1982) (no conflicting or hostile interests). There is very little possibility, if any, Sanders possessed any special insight, advantage or knowledge or any privileged information that prevented him from representing the Bruces. Indeed, if any party has conceivably suffered harm by the potential conflict, it would be Bankers Trust as it was their retained law firm representing the other side. *See Melamed v. ITT Continental Baking Co.,* 592 F. (2d) 290 (6th Cir. 1979). Yet Bankers Trust consented to Sanders' representation of the Bruces.

---

[2] It must be kept in mind this is not a situation where one lawyer is undertaking the simultaneous representation of two adverse clients. Bankers Trust was represented by attorneys not associated with the Leatherwood firm at the foreclosure proceedings.

With regard to the second requirement of disclosure and consent, there must be a full and effective disclosure of all material, relevant facts and circumstances which, in the judgment of a lawyer of ordinary skill and capacity, are necessary to enable his client to give an informed consent. *Lysick v. Walcom, supra; In Re Boivin*, 271 Or. 419, 533 P. (2d) 171 (1975). We hold there was full disclosure sufficient to allow an informed consent.

The Bruces first argue the amount of the retainer fee was not disclosed. We fail to see how the amount of fee is material or relevant. Once the Leatherwood firm entered into the retainer relationship, they were obligated to undertake the representation of Bankers Trust in the areas covered by the agreement notwithstanding the amount of the retainer fee. The amount would only be relevant in determining future payments for actual work performed as opposed to whether the retainer relationship existed. There is strong evidence in the record to support the trial judge's finding that the retainer agreement was disclosed to Tom Bruce. Since the retainer was disclosed, the Leatherwood firm was not required to disclose the amount thereof.

Even though all of the areas of representation covered by the retainer were not disclosed, a full disclosure allowing Tom and Dan Bruce to make free and intelligent decisions regarding the subject matter of the representation was made. *Lysick v. Walcom, supra*. After Wesley Walker's consultation with Bankers Trust officials (in which Bankers Trust consented to the Leatherwood firm representing the Bruces), Sanders informed Tom Bruce there was no conflict. Implicit in this statement was the fact the retainer did not cover foreclosures. Both Tom and Dan were explicitly told the retainer did not cover litigation. This was a sufficiently full disclosure of all relevant and material facts to allow Tom Bruce to give his informed consent regarding the mortgage foreclosure—the subject matter of the representation. Any further disclosure of the retainer relationship could have been in violation of DR4-101(B), which imposes the duty to hold inviolate all confidential communications.[3]

---

[3] See also DR4-101(C)(4), "A lawyer may reveal confidences and secrets necessary ... to defend himself ... or associates against an accusation of wrongful conduct".

There is no doubt Tom and Dan Bruce and Jones consented to Sanders' representing them after full disclosure of the retainer relationship. The May 6 letter is direct evidence of knowledge of the retainer and consent to Sanders' representation despite the retainer. Yet Sanders did not at this time agree to undertake their representation. The matter was discussed with Bankers Trust. Further meetings and conversations were held with the Bruces and Jones. When Sanders told them Bankers Trust had consented, there was no conflict, and that he was willing and able to represent them, the three again consented to accept his services. Any potential conflict was thus waived by the full disclosure and the three partners' informed consent.[4] *Doe v. A Corporation,* 709 F. (2d) 1043 (5th Cir. 1983); *U. S. Fidelity & Guaranty Corp. v. Bolding,* 447 F. (2d) 462 (10th Cir. 1971); *City of Cleveland v. Cleveland Electric Illuminating Co.,* 440 F. Supp. 193 (N. D. Ohio 1977), aff'd 573 F. (2d) 1310 (6th Cir. 1977), cert. denied, 435 U. S. 996, 98 S. Ct. 1648, 56 L. Ed. (2d) 85 (1978).

In order to recover for an attorney's alleged conflict of interest, the client bears the burden of proving the alleged conflict affected the result of the prosecution of defense of the action in question. *Lysick v. Walcom, supra; Woodruff v. Tomlin,* 616 F. (2d) 924 (6th Cir. 1980); *see also Shealy v. Walters,* 273 S. C. 330, 256 S. E. (2d) 739 (1979) (elements necessary to prove legal malpractice; plaintiff must prove injury). Under Section 15-27-130, the Bruces must prove they were surprised and had meritorious defenses to have the deficiency judgment vacated. As these two matters are related in this case, they will be discussed together.

The record shows Tom Bruce, Dan Bruce, and Jones desired that only one tactic be used. It would have been acceptable to all three if Bankers Trust would have merely accepted the deed to the property in lieu of the indebtedness. Bankers Trust refused this offer. Sanders was then directed to use a strategy the three partners had successfully used before. Sanders was instructed not to delay the fore-

---

[4] Tom Bruce's argument that he would not have accepted Sanders' services had he known of the retainer carries little weight in light of the fact that the law firm he hired to replace the Leatherwood firm is also under retainer to Bankers Trust.

closure and judicial sale of the property. This in and of itself precluded him from raising any other defenses. The partners wanted the property sold as quickly as possible so that any remaining deficiency would be subject to the statutory legal interest rate of 6% rather than 11% under the note and modification agreement. Thereafter, the three partners hoped to use the appraisal process, Section 29-3-680 *et seq.*, to reduce the amount of the deficiency to a much lower sum or zero if possible.

Through no fault of Sanders, the strategy failed.[5] Whether or not Sanders agreed with this tactic, he was obligated to follow the specific instructions of his clients. *McCoy v. Hydrick*, 143 S. C. 135, 141 S. E. 174 (1928). Since Sanders was specifically instructed to pursue one particular defense strategy, Tom Bruce is now estopped from claiming Sanders failed to raise other defenses.

The elements of an equitable estoppel are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) the action based thereon was of such a character as to change prejudicially the position of the party claiming the estoppel. *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980); *S. C. State Hwy. Dept. v. Metts*, 270 S. C. 73, 240 S. E. (2d) 816 (1978).

Here, Sanders had no knowledge or means of knowledge that Tom Bruce would later claim Sanders failed to raise other defenses Bruce did not want raised. Sanders relied upon the three partners' instructions to use the appraisal statutes as a sole defense. Finally, Sanders and the Leatherwood firm would certainly be prejudiced if Bruce is allowed to claim Sanders was negligent in failing to raise those other defenses. Thus, the Bruces are estopped to claim the existence of meritorious defenses under Section 15-27-130.

Bruce claims that, even if he was informed of the 23-27 retainer agreement, his wife, who signed the note and

---

[5] That Sanders vigorously pursued this matter is well shown by the fact that he succeeded in getting the entry of the deficiency judgment delayed thirty days. This delay allowed Tom Bruce to sell other property free of the lien which would have resulted from the judgment. Also, he prepared the basis of the appeal which succeeded in getting the appraisers disqualified. The new appraisal by the new appraisers did reduce the previous deficiency somewhat.

was a defendant in the foreclosure proceeding, was never given full disclosure and never consented to Sanders' representation. The trial judge found that Bruce was acting as an agent for his wife. We agree.

The relationship of agency between a husband and wife is governed by the same rules which apply to other agencies. *Milhollin v. Milhollin,* 71 Ind. App. 477, 125 N. E. 217 (1919). However, no presumption arises from the mere fact of the marital relationship that the husband is acting as agent for the wife. *Norburn v. Mackie,* 262 N. C. 16, 136 S. E. (2d) 279 (1964).

The relationship of agency need not depend upon express appointment and acceptance thereof. *Crystal Ice Co. v. First Colonial,* 273 S. C. 306, 257 S. E. (2d) 496 (1979). Generally, agency may be, and frequently is, implied or inferred from the words and conduct of the parties and the circumstances of the particular case. *City of Greenville v. Washington American League Baseball Club,* 205 S. C. 495, 32 S. E. (2d) 777 (1945); *Fernander v. Thigpen,* 278 S. C. 140, 293 S. E. (2d) 424 (1982). It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting within the scope of his authority. *Crystal Ice v. First Colonial, supra.*

It is undisputed Sanders never had any contact or communication with Mrs. Bruce. However, Mrs. Bruce co-signed the note, even though she wasn't a party to the modification agreement. The complaint named her as a defendant. The answer was filed on behalf of both Tom and Mary Bruce. Wesley Walker stated in his deposition his firm was representing Mrs. Bruce and Mrs. Jones as well as the three partners. Yet, in his May 6 letter to Sanders, Bruce requests "on behalf of myself, Jimmy Jones, and Dan" that Sanders represent them. Under these circumstances, it was reasonable for Sanders to assume that Bruce was acting on behalf of his wife in regard to this lawsuit. It was entirely proper for him to represent Bruce based on that assumption. *Fernander v. Thigpen, supra.* Thus, the knowledge of Bruce was the knowledge of his wife. *Crystal Ice Co. v. First Colonial, supra.*

Because Bruce was fully informed as to the existence of the retainer agreement between Bankers Trust and the Leatherwood firm and because he consented to Sand-

ers' representation after being so informed, the Bruces cannot claim they were surprised by the retainer relationship. As they are estopped to assert that they have any meritorious defenses, Section 15-27-130 is not available to them to vacate or reopen the deficiency judgment.

Finally, the Bruces complain the trial judge erred in allowing into evidence documents not listed in the respondents' answers to interrogatories in violation of Circuit Court Rule 90(e)(2). We have examined these documents. They include the following: letters written by Tom Bruce; letters written to Dan Bruce and to their partnership; the mortgage note itself; the declaration of trust; the partnership's balance sheet and tax returns; financial statements of Tom and Dan Bruce; court records concerning Tom Bruce, Tom and Dan Bruce, and their partnership; and letters written to Bankers Trust by the senior members of the firm that replaced the Leatherwood firm in representing the Bruces.

Many of these documents were not in the possession of the respondents as is required under the Rule. Others were equally, if not more, accessible to the Bruces. The Bruces should certainly be more aware of their own financial records and letters than anyone else. In light of this prior knowledge of these records, exclusion of these documents would not be justified even if a violation of Circuit Court Rule 90 had been found. *Kirkland v. Peoples Gas Co.*, 269 S. C. 431, 237 S. E. (2d) 772 (1977); *Martin v. Dunlap*, 266 S. C. 230, 222 S. E. (2d) 8 (1976).

Affirmed.

CURETON and GOOLSBY, JJ., concur.