623 S.E.2d 873

**Richard AIKEN, Respondent,**

v.

**WORLD FINANCE CORPORATION OF SOUTH CAROLINA and World Acceptance Corporation, Appellants.**

No. 4055.

Court of Appeals of South Carolina.

Heard Nov. 9, 2005.

Decided Dec. 12, 2005.

Rehearing Denied Jan. 19, 2006.

Judson K. Chapin, III, of Greenville, for Appellants.

Matthew Price Turner and Rhett D. Burney, both of Laurens, for Respondent.

BEATTY, J.:

World Finance Corporation of South Carolina and World Acceptance Corporation ("Appellants") appeal the circuit court's order denying their motion to compel arbitration. We affirm.

## FACTS

Beginning in October 1997 through late 1999, Richard Aiken entered into a series of consumer loan transactions with Appellants. In conjunction with each of these loan agreements, Aiken signed an arbitration agreement,[1] which provided that the parties agreed to settle all disputes and claims through arbitration.

In late 2002, after Aiken had paid his loan in full, former employees of Appellants used Aiken's personal financial information to illegally procure loans and embezzle the proceeds from those loans.[2] Upon discovering the misuse of his personal information, Aiken filed suit against Appellants seeking a jury trial for damages arising out of the following causes of action: intentional infliction of emotional distress; negligence; negligent hiring/supervision; and unfair trade practices. In response, Appellants denied the allegations and filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, and a motion to compel arbitration.

After a hearing, the circuit court denied Appellants' motions to dismiss and to compel arbitration. In reaching this decision, the court found the creditor/debtor relationship between Appellants and Aiken ended once Aiken satisfied his loan in full. As a result, the court concluded the "effectiveness of the arbitration clause ceased when the relationship of the parties ceased." The court also held the tort claims raised by Aiken were not subject to arbitration because the acts of Appellants'

---

1. Aiken signed several arbitration agreements. However, the only agreements pertinent to this appeal are those executed on February 3, 1999 and July 21, 1999.

2. The former employees pleaded guilty for these offenses and were sentenced in the United States District Court for the District of South Carolina.

employees were "completely independent of the loan agreement." This appeal followed.

## STANDARD OF REVIEW

"The question whether a claim is subject to arbitration is a matter of judicial determination, unless the parties have provided otherwise. Appeal from the denial of a motion to compel arbitration is subject to de novo review." *Chassereau v. Global–Sun Pools, Inc.*, 363 S.C. 628, 631, 611 S.E.2d 305, 307 (Ct.App.2005) (citations omitted).

## DISCUSSION

Appellants argue the circuit court erred in denying their motion to compel arbitration.[3] Specifically, they contend that once the court determined that an arbitration agreement existed between the parties, the court's "decisional function" was completed and any decisions regarding the validity of the agreement and the arbitrability of Aiken's claims were to be decided by an arbitrator. Even if the circuit court was authorized to determine the effectiveness of the agreement, Appellants claim the broad terms of the arbitration agreement encompassed any disputes beyond the expiration of the underlying loan transactions between the parties.

As a threshold matter, we find Appellants' argument that the circuit court's authority was strictly limited to determining whether the parties entered into an arbitration agreement is not properly before this court. First, Appellants did not raise this precise argument in their motion to compel arbitration or during the hearing before the circuit court. Secondly, the circuit court did not address this issue in its order, but instead, only ruled on the effectiveness of the arbitration agreement. Appellants did not file a motion pursuant to Rule 59 of the South Carolina Rules of Civil Procedure to challenge this omission. *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) (recognizing that in order for an issue to be preserved for appellate review, with few exceptions, it must be raised to and

---

**3.** Although Appellants raise four issues in their brief, we have consolidated these issues in the interest of brevity and clarity.

ruled upon by the trial court); *Hawkins v. Mullins*, 359 S.C. 497, 502, 597 S.E.2d 897, 899 (Ct.App.2004) (noting an issue is not preserved where the trial court does not explicitly rule on an argument, and the appellant does not make a Rule 59(e) motion to alter or amend the judgment).

In terms of the merits of Appellants' motion to compel arbitration, we turn to recently established precedent. "Arbitration is a matter of contract, and the range of issues that can be arbitrated is restricted by the terms of the agreement." *Palmetto Homes, Inc. v. Bradley*, 357 S.C. 485, 492, 593 S.E.2d 480, 484 (Ct.App.2004), *cert. denied* (July 8, 2005). Our supreme court has outlined the analytical framework for determining whether a particular claim is subject to arbitration. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 597, 553 S.E.2d 110, 118–19 (2001). In *Zabinski*, the court stated:

> To decide whether an arbitration agreement encompasses a dispute, a court must determine whether the factual allegations underlying the claim are within the scope of the broad arbitration clause, regardless of the label assigned to the claim. *Hinson v. Jusco Co.*, 868 F.Supp. 145 (D.S.C. 1994); *S.C. Pub. Serv. Auth. v. Great W. Coal*, 312 S.C. 559, 437 S.E.2d 22 (1993). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Towles, supra.* Furthermore, unless the court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should be ordered. *Great W. Coal*, 312 S.C. at 564, 437 S.E.2d at 25. A motion to compel arbitration made pursuant to an arbitration clause in a written contract should only be denied where the clause is not susceptible to any interpretation which would cover the asserted dispute. *Tritech [Elec, Inc. v. Frank M. Hall & Co.*, 343 S.C. 396, 540 S.E.2d 864], *supra.*

*Id.* at 597, 553 S.E.2d at 118–19. The court further articulated that "[a] broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* at 598, 553 S.E.2d at 119.

With respect to tort claims, the supreme court noted the test from other jurisdictions stating, "the focus should be on the factual allegations contained in the petition rather than on the legal causes of actions asserted." *Zabinski*, 346 S.C. at 597 n. 4, 553 S.E.2d at 119 n. 4. The court elaborated:

> The test is based on a determination of whether the particular tort claim is so interwoven with the contract that it could not stand alone. If the tort and contract claims are so interwoven, both are arbitrable. On the other hand, if the tort claim is completely independent of the contract and could be maintained without reference to the contract, the tort claim is not arbitrable.

*Id.*

Shortly after the supreme court issued its decision in *Zabinski*, this court had the opportunity to apply the principles set forth and to interpret the "significant relationship" test. *Vestry & Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co.*, 356 S.C. 202, 588 S.E.2d 136 (Ct. App.2003). Although this court utilized the *Zabinski* principles to analyze the question of whether separate arbitration agreements previously executed by the parties mandated arbitration for the claims in dispute, we believe the holding is, nevertheless, instructive. In *Vestry*, we concluded, "the mere fact that an arbitration clause might apply to matters beyond the express scope of the underlying contract does not alone imply that the clause should apply to every dispute between the parties." *Id.* at 209, 588 S.E.2d at 140.

The arbitration agreement in the instant case provides in relevant part:

> ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN LENDER AND BORROWER *ARISING OUT OF OR IN CONNECTION WITH THE LOAN AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR RELATIONSHIP BETWEEN LENDER AND BORROWER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN LENDER AND BORROWER,* SHALL BE SUBMITTED TO ARBITRATION AND SETTLED BY ARBITRATION IN ACCORDANCE WITH THE UNITED STATES ARBITRATION ACT, THE EXPEDITED PRO-

CEDURES OF THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND THIS AGREEMENT.

(Emphasis added). We would also note the arbitration agreement contained a provision that stated, "This Agreement applies even if the Loan Agreement is paid in full, charged-off by Lender, or discharged in Bankruptcy."

Given the broadly worded terms of the arbitration agreement, it is plausible that one could initially conclude that Aiken's claims were subject to arbitration. However, as discussed above, the terms alone are not dispositive of this determination. Instead, we are required to focus on the factual allegations of the underlying causes of action to analyze whether a "significant relationship" existed between the claims and the loan contract. Moreover, because Aiken had satisfied his loan in full at the time his claims arose, we must also look at the parties' intent to assess whether the arbitration agreement extended beyond the termination of the contract. *See Towles v. United Healthcare Corp.,* 338 S.C. 29, 41, 524 S.E.2d 839, 846 (Ct.App.1999) ("When a party invokes an arbitration clause after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract."); *see Zabinski,* 346 S.C. at 596, 553 S.E.2d at 118 ("Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

Applying the foregoing principles to the specific facts of this case, we agree with the circuit court's conclusion that Aiken's claims were not subject to arbitration. Initially, we reject Appellants' contention that the claims arose out of the loan agreement simply because Appellants' employees would not have had access to Aiken's personal financial information but for the loan agreement. Although Appellants' assertion is factually accurate, it disregards the analytical framework for determining whether claims are arbitrable. Aiken's tort claims are independent of the loan agreement and require no reference to the contract. At the time Appellants' employees misused Aiken's personal financial information, Aiken had paid off his loan in full. Thus, a "significant relationship" does not

exist between Aiken's claims and the loan agreement. Moreover, it is inconceivable that Aiken intended to agree to maintain a contractual relationship with Appellants in perpetuity after he paid off his loan. Given Aiken had satisfied his contractual obligation, no further dealings with Appellants were necessary. Finally, we do not believe he could have foreseen the future tortious conduct of Appellants' employees at the time he entered into the loan agreements.

Additionally, we believe our holding is consistent with this court's recent decision in *Chassereau v. Global–Sun Pools, Inc.,* 363 S.C. 628, 611 S.E.2d 305 (Ct.App.2005). In *Chassereau,* a homeowner entered into a contract for the construction of a pool by Global–Sun Pools. The contract contained an arbitration provision that applied to "any disputes arising in any manner relating to this agreement." *Id.* at 633, 611 S.E.2d at 307. After construction was completed, the homeowner began to experience problems with the pool. Because Global–Sun Pools failed to repair the pool, the homeowner stopped making payments on the pool. *Id.* at 630, 611 S.E.2d at 306. A few months later, the homeowner filed a complaint against the pool company and one of its employees, alleging this employee and other employees made a series of harassing and intimidating telephone calls to her workplace. The homeowner claimed the pool company's employees made defamatory statements about her to her co-workers and they disclosed information regarding her personal finances. Additionally, the homeowner asserted these same employees made numerous telephone calls to her home as well as to her relatives in an effort to intimidate and harass her. *Id.*

In her complaint, the homeowner sought damages based on causes of action for defamation, violation of South Carolina Code of Laws section 16–17–430 which prohibits unlawful use of a telephone, and intentional infliction of emotional distress. *Id.* at 631, 611 S.E.2d at 306. The pool company and its employee filed a motion to compel arbitration, alleging the provisions of the construction contract mandated arbitration. The circuit court denied the motion, finding "[t]he complaint is based upon tortious conduct of the employees of [Global–Sun Pools] unrelated to the contract" and the "allegations of the complaint do not arise out of nor do they relate to the contract[.]" *Id.* at 631, 611 S.E.2d at 306–07.

On appeal, this court affirmed the circuit court's decision. In so holding, we found the homeowner's claims did not arise out of the construction contract and could be proved independently of the contract. We further concluded the causes of action alleged in the complaint "constitute[d] tortious behavior that the parties ... could not have reasonably foreseen and for which we seriously doubt they intended to provide a limited means of redress." *Id.* at 634, 611 S.E.2d at 308.

Similar to the homeowner's tort claims in *Chassereau,* Aiken's tort claims did not arise out of the loan agreement and could be proved independently of this agreement. Although we are cognizant of the policy favoring arbitration, we do not believe arbitration is warranted for Aiken's claims. *See Zabinski,* 346 S.C. at 596, 553 S.E.2d at 118 ("The policy of the United States and South Carolina is to favor arbitration of disputes.").

Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.