644 S.E.2d 705

**Richard AIKEN, Respondent,**

v.

**WORLD FINANCE CORPORATION OF SOUTH CAROLINA & World Acceptance Corporation, Petitioners.**

**No. 26313.**

Supreme Court of South Carolina.

Heard Feb. 13, 2007.

Decided April 23, 2007.

Rehearing Denied May 23, 2007.

Judson K. Chapin, III, of Greenville, for Petitioners.

Matthew Price Turner and Rhett D. Burney, both of Turner and Burney, P.C., of Laurens, for Respondent.

Chief Justice TOAL:

Respondent Richard Aiken ("Aiken") filed a law suit against Appellants World Finance Corporation of South Carolina and World Acceptance Corporation (collectively, "World Finance") alleging various torts arising from the misuse of Aiken's personal financial information by employees of World Finance. The circuit court denied World Finance's motion to compel arbitration on the grounds that Aiken's claims were not within the scope of the arbitration clause. The court of appeals affirmed and this Court granted certiorari. We affirm as modified.

### FACTUAL/PROCEDURAL BACKGROUND

World Finance is a nationwide consumer finance company with branch offices in South Carolina. Aiken obtained a series of consumer loans from World Finance beginning in 1997 and continuing through late 1999. Aiken paid off his last loan from World Finance in 2000.

In order to apply for a loan, Aiken was required to supply non-public, personal information to World Finance, including

his date of birth and social security number. Upon approval of each loan, Aiken entered into an arbitration agreement with World Finance. Each arbitration agreement provided, in relevant part:

... ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN LENDER AND BORROWER ARISING OUT OF OR IN CONNECTION WITH THE LOAN AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR RELATIONSHIP BETWEEN LENDER AND BORROWER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN LENDER AND BORROWER, SHALL BE SUBMITTED TO ARBITRATION AND SETTLED BY ARBITRATION IN ACCORDANCE WITH THE UNTIED STATES ARBITRATION ACT, THE EXPEDITED PROCEDURES OF THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND THIS AGREEMENT.

Beginning in late 2002, several World Finance employees conspired to use the personal information provided by Aiken and other clients to obtain sham loans and embezzle the proceeds for the employees' personal benefit.[1] Upon discovering the misuse of his personal information, Aiken filed suit against World Finance in the court of common pleas for Laurens County seeking damages for outrage and emotional distress, negligence, negligent hiring/supervision, and unfair trade practices. World Finance filed an answer, a motion to dismiss, and a motion to compel arbitration.

The trial court found that the effectiveness of the arbitration agreement ceased when the relationship of the parties ended. Because Aiken paid off his last loan with World Finance prior to the tortious acts of the employees, the court concluded that Aiken's tort claims were completely independent of the loan agreements and not subject to the arbitration agreements. Therefore, the court denied World Finance's motions to compel arbitration.

---

1. The now-former employees pleaded guilty for these offenses and were sentenced in the United States District Court for the District of South Carolina.

The court of appeals affirmed the decision of the trial court. *See Aiken v. World Finance Corp. of South Carolina,* 367 S.C. 176, 623 S.E.2d 873 (Ct.App.2005). This Court granted certiorari and World Finance raises the following issues for review:

I. Did the court of appeals err in deciding whether Aiken's underlying claims were subject to arbitration without first submitting the issue to an arbitrator?

II. Did the court of appeals err in finding that Aiken's claims were not significantly related to the underlying loan agreement and therefore not within the scope of arbitration?

## STANDARD OF REVIEW

The determination of whether a claim is subject to arbitration is subject to *de novo* review. *Wellman, Inc. v. Square D Co.,* 366 S.C. 61, 67, 620 S.E.2d 86, 89 (Ct.App.2005). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Thornton v. Trident Med. Ctr., L.L.C.,* 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

### I. The appropriate forum for determining the scope of the arbitration clause.

World Finance argues that under the terms of the arbitration agreement, arbitration is the proper forum for determining the scope of the arbitration agreement. Therefore, World Finance claims that the court of appeals erred in determining whether the arbitration agreement covered Aiken's claims without first submitting the issue to an arbitrator. We find that this issue is not properly preserved for review.

In order to be preserved for appellate review, an issue must have been raised to and ruled upon by the trial court. *Pye v. Estate of Fox,* 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006). World Finance made no argument regarding the proper forum for determining the arbitrability of the underlying claims in either its motion to compel arbitration or in the hearing before the circuit court. Instead, World Finance's argument focused solely on the merits of the motion (i.e.,

whether Aiken's claims were within the scope of the arbitration agreement). Consequently, the trial court's order only addresses whether the scope of the arbitration agreement encompasses the underlying claims.

We agree with the court of appeals that the issue of the proper forum for determining the scope of the arbitration agreement is not properly preserved for review. Accordingly, the court of appeals did not err in deciding the question of whether Aiken's underlying claims were within the scope of the arbitration agreement.

## II. Significant relationship between the underlying claims and the contract containing the arbitration agreement.

World Finance argues that the court of appeals erred in finding that Aiken's claims were not within the scope of the parties' arbitration agreement. We disagree.

Both state and federal policy favor arbitration of disputes and unless a court can say with positive assurance that the arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596–97, 553 S.E.2d 110, 118–19 (2001). However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Id.* at 596, 553 S.E.2d at 118. Given these principles, courts generally hold that broadly-worded arbitration agreements [2] apply to disputes in which a "significant relationship" exists between the asserted claims and the contract in which the arbitration clause is contained. *Id.* at 598, 553 S.E.2d at 119 (quoting *Long v. Silver*, 248 F.3d 309 (4th Cir.2001)).

World Finance primarily argues that because Aiken's contracts with World Finance gave the conspirators access to Aiken's information in order to carry out their crimes, there is a significant relationship between Aiken's claims and the

---

2. Courts typically characterize arbitration agreements purporting to govern disputes "arising out of or related to" the underlying contract between the parties as "broad" arbitration clauses encompassing a wide range of issues. *See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988).

underlying loan agreement, thereby warranting arbitration. We find this argument unpersuasive. In our opinion, the "relationship" asserted by World Finance between Aiken's tort claims and the parties' prior dealings under the loan agreements hardly rises to the level of "significant." Applying what amounts to a "but-for" causation standard essentially includes every dispute imaginable between the parties, which greatly oversimplifies the parties' agreement to arbitrate claims between them. Such a result is illogical and unconscionable. *See Seifert v. U.S. Home Corp.*, 750 So.2d 633, 638 (Fla.1999) ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement."). *See also The Vestry and Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co., Inc.*, 356 S.C. 202, 209, 588 S.E.2d 136, 140 (Ct.App.2003) ("[T]he mere fact that an arbitration clause might apply to matters beyond the express scope of the underlying contract does not alone imply that the clause should apply to every dispute between the parties.").

The court of appeals also rejected this overly simplified approach. Relying heavily on the fact that Aiken had paid his loans in full when the employees' tortious acts occurred, the court of appeals found that there was no significant relationship between Aiken's tort claims and his loan agreements with World Finance. *See Aiken*, 367 S.C. at 182–83, 623 S.E.2d at 876. Therefore, the court held that Aiken's claims were not within the scope of the arbitration agreement found in the underlying contract.[3]

---

3. While relying mainly on the "significant relationship" test to determine whether a claim is arbitrable, the court of appeals also seemed to endorse an additional test used specifically for determining whether a tort claim is arbitrable. The court cited to *Zabinski* for the proposition that tort claims were within the scope of arbitration when "the particular tort claim is so interwoven with the contract that it could not stand alone." *Aiken*, 367 S.C. at 181, 623 S.E.2d at 875 (citing 346 S.C. at 597 n. 4, 553 S.E.2d at 119 n. 4). We note that the *Zabinski* articulation of this test is found in a footnote containing references to tests used by "other jurisdictions" and therefore has not been adopted by this Court as a separate test applicable specifically to tort claims in this context.

 Although we agree with the ultimate conclusion reached by the court of appeals, we do not consider the timing of the employees' tortious conduct to be relevant to the arbitrability of Aiken's claim. Instead, we pronounce a more definitive rule for determining whether a significant relationship exists between a dispute between parties to a contract and the underlying contract, thereby implicating an arbitration agreement in the contract. Because even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.[4]

In this case, we find the theft of Aiken's personal information by World Finance employees to be outrageous conduct that Aiken could not possibly have foreseen when he agreed to do business with World Finance. Consequently, in signing the agreement to arbitrate, Aiken could not possibly have been agreeing to provide an alternative forum for settling claims arising from this wholly unexpected tortious conduct.[5] Accordingly, we hold that Aiken's claims for unanticipated and unforeseeable tortious conduct by World Finance's employees are not within the scope of the arbitration agreement with World Finance.[6]

---

4. Because the parties do not raise the issue of whether any arbitration agreement purporting to apply to such outrageous and unforeseen tortious acts is unconscionable, we leave this determination for another day.

5. *See also Towles v. United Healthcare Corp.*, 338 S.C. 29, 41, 524 S.E.2d 839, 846 (Ct.App.1999) ("When a party invokes an arbitration agreement after the contractual relationship between the parties has ended, the parties' intent governs whether the clause's authority extends beyond the termination of the contract." (citing *Zandford v. Prudential–Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir.1997))).

6. Additionally, we are somewhat puzzled by the concurring opinion's characterization of identity theft as a foreseeable tort. Although this Court indicated its concern over the "rampant growth of identity theft" in *Huggins v. Citibank, N.A.*, 355 S.C. 329, 334, 585 S.E.2d 275, 277 (2003), the rule we set forth today is based on the concept of the expectations of a "reasonable man," a standard deeply rooted in tort law. Therefore, a determination of foreseeability under the rule is to be made from the standpoint of the injured party; not this Court. We do

In establishing the line for claims subject to arbitration, this Court does not seek to exclude all intentional torts from the scope of arbitration. For instance, the parties in the instant case stipulate that a tort claim which essentially alleges a breach of the underlying contract (e.g., breach of fiduciary duty, misappropriation of trade secrets) would be within the contemplation of the parties in agreeing to arbitrate. We only seek to distinguish those outrageous torts, which although factually related to the performance of the contract, are legally distinct from the contractual relationship between the parties. *See McMahon v. RMS Electronics, Inc.,* 618 F.Supp. 189, 191 (S.D.N.Y.1985).

Our decision today does not ignore the state and federal policies favoring arbitration as a less formal and more efficient means for resolving disputes. *See Lackey v. Green Tree Fin. Corp.,* 330 S.C. 388, 396, 498 S.E.2d 898, 902 (Ct.App.1998). This Court merely seeks, as a matter of public policy, to promote the procurement of arbitration in a commercially reasonable manner. To interpret an arbitration agreement to apply to actions completely outside the expectations of the parties would be inconsistent with this goal.

## CONCLUSION

For the foregoing reasons, we affirm as modified the decision of the court of appeals denying World Finance's motion to compel arbitration.

MOORE, WALLER and BURNETT, JJ., concur.
PLEICONES, J. concurring in a separate opinion.

Justice PLEICONES concurring:

I agree with the majority that the first issue is not preserved, and I concur in the decision holding that Aiken's tort claims are without the parties' arbitration agreement. I write separately, however, as I do not agree with the majority's decision to the extent it finds that identity theft is not foreseeable. *See Huggins v. Citibank, N.A.,* 355 S.C. 329, 585 S.E.2d 275 (2003) ("[The Court] is greatly concerned with the ramp-

___

not believe that this Court should proclaim that fraudulent acts such as identity theft are foreseeable in the course of normal business dealings.

ant growth of identity theft and financial fraud...."). I would hold that parties executing a lender-borrower contract containing an arbitration provision do not intend identity theft to be within the ambit of the contract, and further that there is no "significant relationship" between the loan agreement and the allegations of Aiken's tort claims. *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 553 S.E.2d 110 (2001).

With this reservation, I concur.