# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jo Ann Blackwell, Michelene Brooks, and Samuel H. Owens, Jr., individually and on behalf of all others similarly situated, Respondents,

v.

Mary Black Health System, LLC, d/b/a Mary Black Memorial Hospital; CHSPSC, LLC; and Professional Account Services, Inc., Appellants.

Appellate Case No. 2020-001613

———————

Appeal From Spartanburg County
J. Mark Hayes, II, Circuit Court Judge

———————

Opinion No. 6088
Heard March 4, 2024 – Filed September 18, 2024

———————

**AFFIRMED**

———————

James Lynn Werner and Katon Edwards Dawson, Jr., both of Parker Poe Adams & Bernstein, LLP, of Columbia, for Appellants.

Rachel Gottlieb Peavy, of Simmons Law Firm, LLC, of Columbia, for Respondents Michelene Brooks and Samuel H. Owens, Jr.

John S. Simmons and Rachel Gottlieb Peavy, of Simmons Law Firm, LLC, of Columbia; John Belton White, Jr., Griffin Littlejohn Lynch, and Marghretta Hagood Shisko, all of John B. White, Jr., P.A., of

Spartanburg; and Wes A. Kissinger, Thomas A. Killoren, Jr., and Ryan Frederick McCarty, of Spartanburg, all for Respondent Jo Ann Blackwell.

---

**VINSON, J.:**  Mary Black Health System, LLC, d/b/a Mary Black Memorial Hospital (Mary Black); CHSPSC, LLC; and Professional Account Services, Inc. (PASI) (collectively, Providers) appeal the circuit court's denial of their motions to dismiss the amended complaint of Jo Ann Blackwell, Michelene Brooks, and Samuel Owens, Jr. (collectively, Insureds).  Providers argue the circuit court erred by denying their motions to dismiss when Owens's claims were barred by the statute of limitations; Blackwell failed to state a claim for unjust enrichment and could not enforce the agreement between MedCost, Blackwell's insurance carrier, and Mary Black as a third-party beneficiary; Brooks's claims fell under the Medicare Act, which required them to initially seek payment from applicable auto or liability policy coverage; Brooks's and Owens's claims were barred by the voluntary payment doctrine; and the complaint failed to state sufficient facts to constitute a tortious interference with a contract claim or any viable cause of action against PASI or CHSPSC.  Providers also appeal the circuit court's denial of their motion to stay the case and compel arbitration against Owens, arguing Owens's claims must be resolved through arbitration because he was attempting to enforce the agreement between Mary Black and CIGNA, Owens's insurance carrier.  We affirm.

## FACTS AND PROCUDURAL HISTORY

In this case, Insureds received medical treatment at Mary Black for injuries they sustained in automobile accidents.  Insureds allege Providers sought payment for their services by submitting medical bills to Insureds and asserting liens against their third-party automobile accident claims instead of submitting medical bills to Insureds' health insurance carriers.

Blackwell originally filed the complaint as a class action against Providers on January 20, 2017.  After obtaining leave from the circuit court, Blackwell amended the complaint in April 2020 to add Owens and Brooks as plaintiffs.

Blackwell, who stated she had valid health insurance through MedCost at the time of her accident, received treatment at Mary Black that resulted in $33,093.65 in medical bills.  She alleged Providers refused to submit the medical bills to MedCost and instead sought collection by asserting liens against her potential

third-party automobile accident claim.  Brooks alleged she had valid health insurance through Medicare at the time that she received treatment at Mary Black, and her treatment resulted in $9,982.44 in medical bills.  Brooks further alleged Providers asserted liens against her third-party automobile claim instead of turning the medical bills over to Medicare for payment.  Brooks stated Providers agreed to settle Brooks's account if she paid fifty percent of the medical bills, or $4,991.22.  Brooks alleged Providers agreed to accept only the reduced payment after asserting a lien against her third-party recovery in her personal injury case and reviewing the settlement offer in that case.  Similarly, Owens alleged he had valid health insurance coverage through CIGNA when he received medical treatment at Mary Black that resulted in a bill for $9,086.76.  He alleged Providers refused to submit his medical bills to CIGNA and agreed to settle for fifty percent of the original bill after asserting a lien against his third-party recovery in his personal injury case and reviewing the settlement offer in that case.  All Insureds alleged their health insurance carriers would have paid their medical bills had Providers submitted those bills to their respective carriers.

Insureds' amended complaint included claims for tortious interference with a contractual relationship, unjust enrichment, and injunctive relief.  In their tortious interference with a contractual relationship claim, Insureds alleged they had "a valid business expectancy and/or contractual relationship" with their health insurance carriers that Providers knew or should have known about.  They alleged Providers "intentionally and improperly inferred [sic] with and caused a disruption of the business expectancies and/or contractual relationships" between Insureds and their health insurance carriers.  Insureds alleged Providers acted without justification and caused damages to Insureds, who paid premiums for health insurance but received no benefit.  In their unjust enrichment cause of action, Insureds alleged Providers were unjustly enriched when they received "the benefits of proceeds to which they were not entitled" after billing Insureds for their medical expenses instead of their health insurance carriers.  They alleged payment should have been made by the health insurance carriers and the amount paid should have been determined by the contracts between the carriers and Providers.

Insureds' cause of action for injunctive relief alleged Providers were required to send medical bills directly to the Insureds' health insurance carriers and to honor the carriers' contractual discounts for Mary Black's services.  They allege Providers failed to honor the contractual discounts or its commitment to send Insureds' bills to the health insurance carriers.  Insureds stated Providers attempted to increase their profit by seeking payment from Insureds directly despite the fact that they were "precluded from seeking payment for covered services from [sources other

than Insureds' health insurance carriers]."  Insureds requested the circuit court find Providers violated the terms of Providers' agreements with the health insurance carriers, declare the practice invalid and void as a matter of law, and enter a permanent injunction enjoining Providers from continuing the practice.

In June 2020, Providers moved to dismiss the amended complaint or, in the alternative, to stay the case and compel arbitration.  Providers argued the amended complaint failed to allege sufficient facts to constitute a tortious interference with contractual relationship claim; Brooks's claims fell under the Medicare Act, which required them to initially seek payment from any applicable auto or liability policy coverage; Blackwell failed to state a claim for unjust enrichment and was barred from enforcing the agreement between MedCost and Mary Black (the MedCost Agreement) as a third-party beneficiary; Owens's claims were barred by the statute of limitations; and Brooks's and Owens's claims were barred by the voluntary payment doctrine.

In addition, Providers argued Owens's claims against CHSPSC must be resolved through arbitration because he was attempting to enforce the agreement between Mary Black and CIGNA (the CIGNA Agreement), which included an arbitration clause.  Section 6.2.1 of the CIGNA Agreement stated, in part,

> Any disputes between the parties arising with respect to the performance or interpretation of the Agreement shall first be resolved in accordance with the dispute resolution process outlined in the Administrative Guidelines.  In the event the dispute is not resolved through that process, either party may request in writing that the parties attempt in good faith to resolve the dispute promptly by negotiation between designated representatives of the parties who have authority to settle the dispute.  If the matter is not resolved within 60 days of a party's written request for negotiation, either party may initiate arbitration by providing written notice to the other party.

Section 6.2.2 of the CIGNA Agreement went on to state, in part, "Arbitration shall be the exclusive remedy for the resolution of disputes arising under this Agreement."  Providers argued that if the circuit court found CHSPSC was a party to the CIGNA Agreement, then Owens must arbitrate his claims pursuant to the terms of the CIGNA Agreement because he intended to enforce the terms of the agreement.  Insureds filed a response in opposition to Providers' motions to dismiss, and the circuit court heard the motions.

In September 2020, the circuit court issued an order denying Providers' Rule 12(b)(6) motions and their motion to compel arbitration against Owens. The circuit court held the terms of the CIGNA Agreement did not obligate Owens to participate in arbitration because he was not a party to the CIGNA Agreement. The circuit court found the arbitration provision stated it did not apply to third parties or "class" matters and, therefore, Owens was not required to arbitrate his claims. The circuit court also noted the agreement was for three years but contained a year-to-year renewal and found no decision could be made as to whether the agreement was in effect based on the information provided.

As to Providers' Rule 12(b)(6), SCRCP, motions to dismiss, the circuit court found the allegations included in the amended complaint were sufficient to state causes of action against CHSPSC and PASI and there was no prohibition against referring to Providers collectively. The circuit court found Insureds stated sufficient facts to assert a claim for tortious interference with a contractual relationship in the amended complaint because Insureds' allegations could reasonably be construed to mean Providers' conduct resulted in a breach of the contract between Insureds and their health insurance carriers. It also found Brooks's claims did not fail under the Medicare Act. The circuit court stated it would have to go outside the amended complaint to determine if Providers were required to seek payment from any applicable liability coverage before seeking payment from Medicare and presume facts not alleged in the amended complaint to find the at-fault driver in the automobile accident had a valid insurance policy from which Providers could collect. The circuit court also stated it could not accept the voluntary payment doctrine as a defense at this stage of litigation when it was bound to accept Insureds' theories of liability as fact in ruling on a Rule 12(b)(6) motion and Insureds alleged Owens and Brooks were extorted to make the payments involuntarily. The circuit court also found it could not dismiss Blackwell's claim for unjust enrichment because a reasonable inference could be made that it would be inequitable to allow Providers to be unjustly enriched by retaining "the benefits of their wrongful billing practices while attempting to collect a higher amount from [Insureds]."

Providers filed a motion to alter or amend the circuit court's ruling on the Rule 12(b)(6) motions and the motion to compel arbitration, which the circuit court denied. This appeal followed.

**STANDARD OF REVIEW**

"The determination of whether a claim is subject to arbitration is subject to *de novo* review." *Aiken v. World Fin. Corp. of S.C.*, 373 S.C. 144, 148, 644 S.E.2d 705, 707

(2007).  "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings."  *Id.*

"Denials of Rule 12(b)(6) motions are not immediately appealable."  *Weaver v. Brookdale Senior Living, Inc.*, 431 S.C. 223, 234, 847 S.E.2d 268, 274 (Ct. App. 2020).

**LAW AND ANALYSIS**

### I.        Arbitration

Providers argue the circuit court erred in failing to find Owens's claims were subject to the arbitration provision in the CIGNA Agreement.  They contend Owens's claims must be arbitrated because they all involve his effort to enforce terms of the CIGNA Agreement and to derive direct benefits from the agreement.  Providers further assert the circuit court erred in finding the language of the CIGNA Agreement stating "either party may initiate arbitration by providing written notice to the other party" renders the arbitration provision unenforceable because arbitration does not have to be the exclusive remedy to be binding and enforceable.  They also argue the disclaimer of class arbitration and the bar to consolidating arbitrations with third parties found in the CIGNA Agreement did not render the arbitration provision unenforceable.  We disagree.

"[T]he presumption in favor of arbitration applies to the scope of an arbitration agreement; it does not apply to the existence of such an agreement *or to the identity of the parties who may be bound* to such an agreement."  *Wilson v. Willis*, 426 S.C. 326, 337, 827 S.E.2d 167, 173 (2019) (alteration in original) (quoting *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App. 2011)).  "Moreover, because arbitration, while favored, exists solely by agreement of the parties, a presumption *against* arbitration arises where the party resisting arbitration is a nonsignatory to the written agreement to arbitrate."  *Id.* at 337-38, 827 S.E.2d at 173.  "[W]hen considered in the proper context, our statements that the law 'favors' arbitration mean simply that courts must respect and enforce a contractual provision to arbitrate as it respects and enforces all contractual provisions. There is, however, no public policy—federal or state—'favoring' arbitration."  *Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 432 S.C. 633, 639, 856 S.E.2d 150, 153 (2021).

"South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil

piercing/alter ego, and (5) estoppel." *Wilson*, 426 S.C. at 338, 827 S.E.2d at 174. Equitable estoppel "estops a nonsigner from refusing to comply with an arbitration provision of a contract if (1) the nonsigner's claim arises from the contractual relationship, (2) the nonsigner has 'exploited' other parts of the contract by reaping its benefits, and (3) the claim relies solely on the contract terms to impose liability." *Weaver*, 431 S.C. at 230, 847 S.E.2d at 272.

> In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause *when he has consistently maintained that other provisions of the same contract should be enforced to benefit him*.

*Pearson v. Hilton Head Hosp.*, 400 S.C. 281, 290, 733 S.E.2d 597, 601 (Ct. App. 2012) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)).

"[U]nder the [theory of equitable estoppel], a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Wilson*, 426 S.C. at 340-41, 827 S.E.2d at 175 (quoting *Belzberg v. Verus Invs. Holdings Inc.*, 999 N.E.2d 1130, 1134 (N.Y. 2013)). "A benefit is direct if it flows directly from the agreement." *Id.* at 343, 827 S.E.2d at 176. "In contrast, any benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relationship of the parties, but does not exploit (and thereby assume) the agreement itself." *Id.* "Generally, these cases involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Pearson*, 400 S.C. at 291, 733 S.E.2d at 602 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)).

Initially, we hold the arbitration clause of the CIGNA Agreement is binding and enforceable despite including language stating "either party may initiate arbitration" because Providers enforced the clause when they filed a motion to compel arbitration. *See MailSource, LLC v. M.A. Bailey & Assocs., Inc.*, 356 S.C. 370, 377, 588 S.E.2d 639, 643 (Ct. App. 2003) (finding an arbitration clause was elective and that "[e]ither party may demand arbitration of a dispute but neither is required to do so").

However, we hold the circuit court did not err in denying Providers' motion to compel arbitration against Owens under the theory of equitable estoppel. *See Wilson*, 426 S.C. at 340-41, 827 S.E.2d at 175 ("[U]nder the [theory of equitable estoppel], a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." (quoting *Belzberg Holdings Inc.*, 999 N.E.2d at 1134)); *id.* at 345, 827 S.E.2d at 177 ("Equitable estoppel is, ultimately, a theory designed to prevent injustice, and it should be used sparingly."); *id.* (stating "equitable estoppel should be used sparingly to compel arbitration and noting it 'is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration'" (quoting *Hirsch v. Amper Fin. Servs.*, LLC, 71 A.3d 849, 852 (2013))). Unlike the third party in *Pearson*, Owens did not benefit from the CIGNA Agreement and did not know about the agreement prior to this litigation. *See Pearson*, 400 S.C. at 296-97, 733 S.E.2d at 605 (finding an anesthesiologist was equitably estopped from asserting he was not bound by an arbitration clause contained in a contract between a hospital and a medical professional placement company when he was able to work at the hospital and received payment for his work because of the contract and he knowingly accepted the benefits of the contract); *see also Wilson*, 426 S.C. at 342, 827 S.E.2d at 176 (finding nonsignatories were not bound by an arbitration clause in a contract under the theory of equitable estoppel when they were not aware of the contract before bringing their actions). Owens never alleged in the complaint that he received a direct benefit from the CIGNA Agreement, and his claims for tortious interference with a contract and unjust enrichment are not pled as arising from the CIGNA Agreement. *See Weaver*, 431 S.C. at 230, 847 S.E.2d at 272 ("[E]quitable estoppel . . . . estops a nonsigner from refusing to comply with an arbitration provision of a contract if (1) the nonsigner's claim arises from the contractual relationship, (2) the nonsigner has 'exploited' other parts of the contract by reaping its benefits, and (3) the claim relies solely on the contract terms to impose liability.").

Owens pled his tortious interference with a contract claim as arising out of *his* agreement with CIGNA, which he argues Providers interfered with, not the agreement between Mary Black and CIGNA. He alleges Providers "proximately caused" the Insureds' damages because Providers' "actions resulted in [Insureds] having paid premiums but receiving no or little benefit." Owens's tortious interference with a contract claim does not arise solely from or have to be determined in reference to the CIGNA Agreement; it arises out of tort law and does not refer or relate to the CIGNA Agreement even if it would not have arisen but for the agreement. *See Wilson*, 426 S.C. at 343, 827 S.E.2d at 176 ("When a

claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of that agreement." (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018))); *id.* ("'[W]hen the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract *or would not have arisen 'but for' the contract's existence*." (quoting *Jody James Farms, JV*, 547 S.W.3d at 637)).

Owens's unjust enrichment claim, (again, as pled) also does not rely on the CIGNA Agreement. The amended complaint instead alleges Providers were unjustly enriched because "they received and retained the benefits of proceeds to which they were not entitled" and "[s]aid benefits were conferred on [Providers] by [Insureds] and were unlawfully obtained to the detriment of [Insureds]." The amended complaint further alleges "it would be unjust for [Providers] to retain these funds because payment of the services provided should have come from the health insurance of [Insureds], with the amount to be paid for services provided determined by the [CIGNA Agreement]." Owens alleges it was unjust for Providers to bill him for their medical services instead of CIGNA, his insurer. Owens's unjust enrichment claim refers to the CIGNA Agreement, but the claim does not rely upon or have to be determined by reference to the CIGNA Agreement. *See id.* ("When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of that agreement." (quoting *Jody James Farms, JV*, 547 S.W.3d at 637)). The substance of Owens's unjust enrichment claim arises from the common law, and the claim could be determined in reference to Owens's insurance contract with CIGNA. *See id.* ("'[W]hen the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law,' direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen 'but for' the contract's existence." (quoting *Jody James Farms, JV*, 547 S.W.3d at 637)).

Although Owens's claim for injunctive relief does rely on the CIGNA Agreement in that he requested that the circuit court find Providers violated the agreement by billing him instead of CIGNA, the claim requests that the court enjoin Providers from engaging in unlawful billing practices in the future, not any benefit for Owens. We find the arbitration clause in the CIGNA Agreement should not apply to Owens when two of the three claims alleged do not arise from the CIGNA

Agreement. *Wilson*, 426 S.C. at 342, 827 S.E.2d at 176 (finding a third party was not bound by an arbitration clause in a contract when South Carolina law formed the basis for most of their claims).

## II.     Interlocutory Rulings

Even though such rulings are usually unpreserved, Providers argue this court should review the circuit court's denial of their Rule 12(b)(6) motion because it is reviewing the circuit court's denial of their motion to compel arbitration against Owens, which was immediately appealable. We disagree.

---

[1] We note that the CIGNA Agreement stated any dispute should be resolved according to the Administrative Guidelines—which were not included in the record—and through a process of negotiation before the parties could request arbitration. The record does not include any indication Mary Black required Owens to resolve the dispute under the Administrative Guidelines or through negotiation before arguing he must arbitrate his claims pursuant to the CIGNA Agreement.

We decline to review the denial of Providers' Rule 12(b)(6) motions because the denials were interlocutory and are not immediately appealable. *See Weaver*, 431 S.C. at 234, 847 S.E.2d at 274 ("Denials of Rule 12(b)(6) motions are not immediately appealable."). Although this court has reviewed interlocutory orders when a motion to compel arbitration was before it, this court has also declined to review the denial of Rule 12(b)(6) motions under such circumstances. *See id.* (declining to address the denial of appellant's Rule 12(b)(6) motions when affirming the circuit court's denial of a motion to compel arbitration and opining the issues addressed in the Rule 12(b)(6) motions would benefit from further factual development); *cf. Cox v. Woodmen of World Ins. Co.*, 347 S.C. 460, 469-70, 556 S.E.2d 397, 402 (Ct. App. 2001) (considering the denial of a Rule 12(b)(8), SCRCP, motion to dismiss when the denial of a motion to compel arbitration was already before the court). Here, the only immediately appealable issue is the denial of Providers' motion to compel arbitration against Owens. Further, we believe the issues raised by Providers' Rule 12(b)(6) motions would benefit from further factual development. *See Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007) ("If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then dismissal under Rule 12(b)(6) is improper."). Accordingly, we decline to address the denial of Providers' Rule 12(b)(6) motions under these circumstances.

**CONCLUSION**

Based on the foregoing, the circuit court's denial of Providers' motion to compel arbitration is

**AFFIRMED.**

**HEWITT, J., concurs.**

**GEATHERS, J.:** I respectfully depart from the decision reached by the majority. I interpret the causes of action in the Amended Complaint to invoke the Providers' contractual duties to the insurance carriers with which Insureds also had contracts. "When a claim depends on the contract's existence and cannot stand independently— that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Wilson v. Willis*, 426 S.C. 326, 343, 827 S.E.2d 167, 176 (2019) (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018)). In other words,

[e]quitable estoppel precludes a party from asserting rights "he otherwise would have had against another" when his own conduct renders assertion of those rights contrary to equity. In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [Federal] Arbitration Act."

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir. 2000) (citations omitted) (first alteration in original) (first quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough* (*In re Varat Enters., Inc.*), 81 F.3d 1310, 1317 (4th Cir. 1996); then quoting *Avila Group, Inc. v. Norma J. of California*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977)). Therefore, I would reverse the circuit court's denial of Providers' respective motions to compel arbitration.